The appellate court of Illinois is reconvened. Good afternoon, you may be seated. Last case this afternoon is 416-0123 in re Marriage of Koppenhoefer. Okay, I'll just call appellants and appellees. For the appellant is Jeffrey Riva. Eric Gibson, did I get that one right? Good. Mr. Riva, you may proceed, sir. Thank you, your honor. Please, the court counsel, this is Melanie behind me. Counsel. As you might have expected. No one else would probably be here at 3 o'clock on a somewhat cloudy day. I represent Melanie, but I assume we all know that what we're really here dealing with are the best interests of a 4-year-old little girl. And what we had in this case was a trial on a petition to modify what had earlier been an agreed visitation restriction. The father had agreed that he had major alcohol abuse and anger management problems and had agreed to about as limited a visitation I think I've ever seen in all my practice, which was just to be in the mother or the mother's home for just an hour or two a few times per week. After a period of time, he filed to modify and we had a day and a half long bench trial. And our position, the skeleton of the whole thing is this. We think that because there was an alcohol and an anger management restriction, it was up to the father to show that it was in the best interest of the child to drop those. But then there was also, even if he prevailed, there was still the overriding issue of the best interests of the child, which is where a lot of our evidence happened to focus because of the position that we took. And that was that the father was just simply ill-equipped for whatever reason to handle a small child under all the circumstances, with the type of conduct he had engaged in, the type of wording and verbal abuse of the child he had given. So that's one of the things we think that the whole ruling should be reversed. But we also, taking a step to the next round here, the trial itself there were some major, major problems. Now I know, I've done this for years, I know I've seen enough, had notes on what abuse of discretion is, but I really, really think this is a case that merits the type of careful, non-rubber stamping review by this court as to what happened in connection with some of these issues. One of which was, after we tried to get through the case as quickly as we could, because there really was a mountain of evidence, we unfortunately, I think, ran into the problem that it was 4.30 on the day before Christmas Eve. And we were trying to go fast, and I'm sure Mr. Gibson was trying to go fast. Unfortunately, I think the trial judge was trying to go even faster because he cut off the trial after we had put on our last witness. He said, I don't need any cross-examination, I don't want to hear rebuttal, I'm done, I'm not going to hear closing arguments. All we're going to talk about is what unsupervised visitation that I'm going to allow. Of course, I'm standing last minute with my reams and notes of closing argument. I think one of the problems with that, I think I want to talk about that first while I'm on the subject. Closing arguments are important in any case. Now I know that there seems to be a distinction between a fundamental right to have a closing argument in a jury trial and in a bench trial. At least so says the First District. My view is somebody could have a jury trial on a $2,000 small claims case and have a right to argue. It seems that in the best interest of the child's case, there should always be a right, a fundamental right, to summarize all of the evidence. I think as a matter of law, that should be a rule. I think it's important to note that when we talk about the closing arguments, I'm sure Mr. Gibson's brief is replete with instances of citing the cases that say when you have a custody or visitation trial, there's deference given because the trial judge saw the witnesses, trial judge read everything, saw how everybody acted. I agree with that completely. But it seems to me that that's even more important why you should have to have a closing argument so you can summarize everything. I put in reams of exhibits. Judge Feeney would have probably hit me or thrown me in jail if I tried to publish these like in a jury trial where I had the client read or the witnesses read and read and read. I would have been there for two more days. I don't know how Judge Feeney could have known how I was trying to tie all of this together as I've tied it together now in our brief without knowing really what I was actually driving. It seemed to us that he had plenty of evidence, but it seemed like he had made up his mind and was not going to let this proceed any farther. He didn't want to hear any evidence more than where we were. I submit that even from the standpoint, I mean no one knows, I'm speculating to some extent, what would have happened if my client had been cross-examined or some rebuttal evidence had been put on. Nobody's case is perfect. Who knows what would have happened in the rest of the trial if it had been allowed to continue. So I think we were definitely shortchanged in connection with the closing argument issue. I think in addition where the problem that I see I think is a really fundamental issue that kind of crystallizes around our argument about overnight visitation. Now the court may be aware that what we had is an unfortunate situation where we had our trial and it took us a while to get the order done. Judge Feeney had said everything's binding, so we didn't want to be in contempt by trying to deny visitation. So by the time we could get down here, we did file a motion which your court granted to at least stay. We've had no overnights. They were supposed to go into effect in late March. They haven't started pursuant to your stay order. The important thing I think to note about the overnight visitation issue is this. I really think that what happened here is that's the way the arguments went and I think that's the way the argument of Appellee is at this point. And that is they thought, I think the trial judge did also believe that if the alcohol and the anger management restrictions were lifted, that automatically meant we went to regular standard visitation that would include overnights after a few months. And I don't think that that is what the law is. I think the way this statute is set up, you have to prove it's in the best interest of the child. It's not just we just eliminate a couple of restrictions and then everything is fair game and completely open and you go right to regular visitation without there even being any type of court review. And that's one of the things we're definitely asking. No matter how you rule, we really should have a court review before we go to overnights if that comes to pass. I don't understand what it is you're saying. Why should we assume that the trial judge didn't understand these are incremental if he thought it was perfect? Well, I think two of your cases answer that question, which I cite one in the reply brief and the other one is cited in that case. And that's actually Justice Appleton was a panel member on both. I don't know whether he remembers them, but one of them is this Wittendorf case. We had a father, a really young child. There had not been a real close connection between the two of them. And the trial judge just modified visitation from a couple of hours a week and pretty much threw the door open to carte blanche. And this court said that it was an abuse of discretion to have not had a more gradual modification of visitation. That man was a stranger to the child, basically, right? This child has had visitation. Well, I guess it's all a matter of degree. I agree that he had not had a lot of time with the child, but my point is what's similar to this case is our father in our case did not have any real... By the time we were in front of Judge Feeney for that trial, he had only had never more than a couple hours in the home of the mother or the mother's mother with the child there. So I don't see that that's a major distinction between no contact and very, very limited contact. To me, in Wittendorf, as I said, the father was a stranger to the child, and that court was allowing the child to go overnight with basically a stranger. Whereas here, this child knows this is her father. She's had regular contact with him. It may not have been lengthy contact, but that was a result of the restrictions that were requested and agreed to by him initially. Well, I would disagree, but I would especially say that, and this is what we argued for, and actually the father really said he was agreeing to a stair step. It was in his testimony. It was in the trial judge's notes, and my point is what would the harm have been to set a court review to see where everybody... I've never seen a case done other than like this when you go from restricted to somewhat unsupervised. If you're doing a stair step, the whole idea of the stair steps is you have a court consider where we are in between steps. But he did do a stair step, didn't he? Well, he did the stair step with a presumption, I guess, that everything was going to work out automatically fine. And if it wasn't, though, wouldn't your client have a right to come in on a petition to modify or reconsider based on what was occurring during the stair step transition period? I think she could, but, of course, that leads me to the next question, which I think is alluded to in my brief. What's this test going to be at that point? Is she going to have to bear a serious endangerment test, or is he just going to have to prove at a court review that he's gotten better, there's been no problems? It would seem to me it's going to be easier for him to prove there's no problems than to meet a serious endangerment test, which I think my understanding is that might be what we have to be facing if that's what came about where there was no review in the meantime. So all we're asking on that part of it is, since we right now have the overnight stayed, we think there should be some court review. There should be some process to see what's been happening in the last few months in regard to this. I don't see that that's terribly onerous for either side to meet with the court or possibly even have the guardian of light appointed at that point, or somebody sit with the child and find out what's going on. Obviously, my client doesn't have any way to break in or eavesdrop on what's going on when the father has the child, so maybe some type of mechanism where the child can be interviewed by some professional may be appropriate. So I have plenty more to say. Any other questions in regard to those points at this point? Back on the question of whether the trial was appropriate, these are all in our brief, but we had heaps of evidence as to what had happened before the MSA, the Marital Settlement Agreement, was signed and approved in 2013. Now, counsel objected and Judge Feeney, well, I'll let part of it in, but I'm not going to let a lot of it in. But he actually said that he was only going to consider our Exhibits 5, 6, and 12, which were letters that the father had signed approving what Melanie had written as like a summary of all the things that he had done. And those are all listed in our brief and reply brief. I don't have time to go through all of them, but I commend the court to take a look. These are his own words, in effect, since he signed these. And the judge said, no, all I'm going to do is I'm going to consider that for the purposes of impeaching his testimony when he said he had foolishly signed the MSA. Well, that's not the only relevance of this. He had made admissions, and I tried to get across to Judge Feeney, and I hope I can get across to this court. You have to have a baseline. If somebody has a little bit of a drinking problem, you may not have to take quite as much steps or a little bit of an anger problem. But if you have major problems, I would believe that the court should have a heightened level of scrutiny as to what the fix, so to speak, has been. Maybe going to a few AA meetings is enough for some people, but for others, like this gentleman, who has admitted in letters that he has a problem and said that he was cured, now he's not cured. He said when he drinks, he blacks out, doesn't remember anything. I mean, shooting guns off, driving fast while he's drinking. But there was no evidence, Mr. Riva, that he had consumed alcohol since 2012, was there? Well, I think there actually was for this reason. One, he had admitted in these letters, that's a very good point, because the letters that Judge Feeney said he was only going to consider for impeachment were ones where the father had said that he had an alcohol abuse problem. Those were after he said he had stopped drinking and even after. But that was all prior to the Merrill settlement. No, but then in addition, we had evidence that, and this again is the problem with this record, Melanie testifies unrebutted that she found containers of alcohol in the house way into 2014. Now, Judge Feeney didn't make father come in and say those weren't mine or they were six years old or anything of that kind. So we never really, you can't tie up every loose end in the trial. You know from being trial judges, there's only so much time to deal with things. So when we dealt with what we had, we figured that was good enough evidence. Well, maybe, who knows what would have happened on cross-examination or on rebuttal, but we never got to that point. Did he testify? The father? Oh, certainly. Was he asked about the bottles? He, I don't believe he may have been, because I think, I know he wasn't asked. If it's important enough that you're citing to us now, why didn't you ask him that? Well, that's a trial strategy, I guess. I mean, there was so much here we had to kind of divide what we thought we could get from him, because we knew that other people were going to testify and we knew that we, you know, again, if we'd had an extra day, you know, maybe we would have done that. I mean, in retrospect, I would have loved to have done that. Who knows what he would have said, but there's only so much you can do in the allotted time. So I do believe that there was an error in not considering this pre-MSA conduct. The case law says that you're supposed to consider it, and it's an abuse of discretion not to. And I think the judge just shortcut this by just saying I'm going to consider it for one purpose, where the major purposes were of substance. And, again, those are matters that are discussed in my brief. Now, in addition on the alcohol, which was one of the issues that we said he had to have proven that it was in the best interests that that restriction or that basis for restriction be removed, really all he had was his self-report. And I might add, if you look at this record, bystanders report all the exhibits, most of what we have from the father is his self-reporting to the court and self-reporting to counseling people and AA people, and there's really no objective proof or tie-in here. So what we had was father says, I'm not drinking. Mr. Meyer says, I've seen him at some AA meetings. The crucial thing was they did get into evidence, this exhibit number one of theirs, which talked about the idea that it was just a one-time, it was a conclusory report from one time in front of some evaluator. In essence, you don't have a problem, okay? Not the same words, but that's the net effect of what was offered. The problem was it was complete hearsay, didn't bring a witness, they didn't provide us the certificate as required by Rules 8036 and 902.11, and, I mean, they couldn't have done that. The thing was dated the day before they handed us this document at the trial itself. So that could not have been timely under those rules. So we think that that was a prejudicial error, that made for an unfair trial, because without it, I don't think he would have had anything other than just making a self-report and having some witnesses. And, frankly, Judge Feeney, I guess maybe this is somewhat out of the record, but I know he said when we talked about this pretrial, you know, don't just come in and say, I'm okay, I'm fixed, you're going to have to come up with something. So this was a crucial part of the case, but it was clearly hearsay and prejudicially so as well. So that should be eliminated. I think I have a couple more minutes here. To get back to the, I guess what I would consider the main event, I'd ask the court again, and I don't simply have the time to go through a full, you know, closing argument like I wanted to make in Woodford County, but it's all in the briefs. And what I would ask the court to do, just look at what the father's testimony was and the exhibits that came in and the witness's testimony that people like he called. And if you stack that all up and follow our brief, I think you'll see that he did, it was against the manifest way to the evidence that he had beaten his alcohol restriction, especially enough so to automatically go to overnights. He had not shown enough to beat and show that he was fixed from an anger management standpoint. Page 9 of our reply brief, there's about 7 or 8 sites on that page to all the things that happened even after the marital settlement agreement where there were anger management issues that are laid out in summary fashion with the dates that they occurred. Counsel, I want to go back for a moment to the exhibit from the Tazewell Mental Health Center, Tazewood Mental Health Center, that you say you objected to and was improperly admitted. The docket entry for that day simply says that the exhibit was admitted over your hearsay objection. We don't have any bystanders report a record of what was presented and what was argued and the ruling by the judge. What happened? Well, they tried to tender it. We objected on hearsay. They said look right in the document itself. You'll see that exhibit has those statutory signs. What arguments were made by the court? What was the discussion by counsel? What was the explanation by the court, if any, for the ruling it made? It's supposed to have a record on these things. Well, I would submit in a case like this where you say hearsay and the document itself is talking about those particular rules. That ties everything together. It's not some other exception. You can't tell, but there's over 40 years of trial court experience on the bench facing. I realize that. We understand that there are different arguments made. There are explanations provided by courts for rulings. Sometimes, maybe not always, but that's why there's a record made of this. Before we reverse a trial court for a ruling the court made, we ought to have the record surrounding the circumstances of that ruling. We don't. We have objection on hearsay. We don't have your explanation about it. We don't have Mr. Gibson's arguments, if any, as to why it was proper. We don't have the court's explanation of why the court ruled admissible. Maybe there wasn't anything. But on the other hand, I need to know, and I think this panel wants to know, what was said, and if there's a record provided saying nothing, that's different than the absence of a record saying anything. Well, I respectfully disagree only because we did say hearsay. It was obviously on its face, hearsay, and the document they put in, they had right in it the sites that this was being the certification. Why was your objection overruled? Well, why was I not allowed to do closing arguments, and why was I allowed not to do that? Did the trial court explain its ruling? I remember it just saying that he thought the certificate was good enough to get it in without the lie of witness. Your time is up. We'll give you an opportunity to address this again in rebuttal. Mr. Gibson? May it please the court? Counsel? As an initial housekeeping matter, I noticed that the brief I had sent in had the page numbers submitted for the points and authorities. Does the court wish I brought copies in case you wish? Go ahead. This is a case in which obviously there's two parents that are on different ends of the spectrum as far as how they see the parenting of this matter to go. It got off to obviously a poor start. Shortly after the child was born, the parties divorced. My client, Kelly, signed an MSA in which he admitted to having alcoholism and anger management issues. Not major, just alcoholism and anger management issues. He was pro se. That doesn't matter. The reality of the situation is he's bound by the court order that was entered at that point. The MSA that he was bound by said he got restricted visitation in a manner that was probably not the most appropriate for what he had hoped to do as far as getting to the point of bonding with his child. So he decided to take the steps that were necessary to try to prove to the court and prove to everyone essentially that he was making improvements in himself in order to get past the issues that he self-reported. He went to anger management counseling. Counseling with Julie Zellner. A VISTA position was taken on that. He regularly went to AA. He took two parenting classes, one at the Children's Home in Peoria and one at the Prenton Center in New York. Went to Tazwood Mental Health to get a substance abuse evaluation and went to a men's group at his church. The situation is he took these steps. He tried to do the things that were necessary to get himself to the point where he needed to be. That was all brought out at trial. There's obviously disagreements as to the weight of the evidence, and that's ultimately where a lot of the argument in this case stands, is what weight should be given to the evidence. The trial court judge is the judge that is in the best position to make that decision. That judge is the one that gets to sit there and gets to see exactly how the parties testify, how the witnesses testify, gets to gauge from that point the credibility of each of the witnesses, the biases, that kind of thing. He's sitting there calling balls and strikes. This court is at a disadvantage. There's no transcript. Woodford County doesn't have electronic reporting. They'll be aware of a court reporter. We're stuck with a bystanders report. So therefore, this court has to go off the bystanders report. Obviously, this court is at a disadvantage compared to the trial court who got to sit there and listen to everything firsthand. Obviously, in my brief, I went through and I pointed out cases in which it discussed the standard for manifest weight of the evidence, use of discretion, all of that. Counsel argues that first, the closing argument issue. The issue he tries to push is that the determining test shouldn't be the form of the trial, bench or jury. It should be whether or not the content requires a closing argument. That's not what the test is. In fact, the cases repeatedly came through and the courts have said, primarily in the first district, as counsel points out, that a closing argument is a privilege in a bench trial, not in a jury trial. Now, why would the courts find that? Well, it's not necessarily the actual content or the basis of the hearing, small claims versus best interest of the minor. It would seem to be that it's a prior fact. In a jury trial, your prior fact is people from the community don't have that same legal background. In a bench trial, obviously, your prior fact is a circuit court judge in that situation. Regarding the overnight issue, the overnight issue is obviously an important one that's brought up in the briefs and it's also brought up in argument. The court didn't automatically go to overnights. The court looked at this case and even made a finding. The court stated that it is no longer in the best interest of the minor to have supervised visitation with her father. The court found, in the best interest of the minor, that there's no restriction. Therefore, to now argue that the court should not allow the appellee the ability to have overnight visitation without having to jump through more hoops, is contradictory to what the statute says. The statute says that to impose a restriction, there has to be a basis for the restriction. The court in Fields, out of the 4th District, even stated that. It's necessary that taking away overnights is actually a form of restriction. If that's the case, then we're looking at a situation where the proposition by the opponents is, okay, you've proved that the restrictions that were previously put on there are no longer needed. Now, you have to go through and you have to prove that no further future restrictions are going to be needed based on your guess of what the issue is. The court did put together a stair-step approach. The court gave three months to the parties to see how the unsupervised regular, well, I'll call it regular, meaning daytime, hour-to-hour visitation, went. And then, three months later, it was supposed to change. The court pointed out, which I totally concur with, Justice Polk, I believe it was you that stated, that's a stair-step approach, and why couldn't the opponent come back in at that point if there was an issue? Well, exactly, and that's the whole point. We're now six months, over six months almost, removed from the point that the order got put into place, and my client still hasn't gotten overnight visitation because of the fact that the stay was entered, but that's where we are. There shouldn't be additional restrictions placed on him without there being a basis for those restrictions. There has been no restrictions. I'll save the court my argument in Wittendorf, because I had the same points, especially with it being a situation where there was also an OP in place, not the same thing here, as there was no OP in place here. Back to the argument on weight. So, the weight of the evidence is one of the big issues that's being pushed here. The evidence that was brought into the court by the appellant was copious. There was a ton of testimony. This was a day-and-a-half trial in which my portion of the case went through operatives. The rest of the time was time in which there was enormous amounts of testimony about everything from my client making inappropriate sexual innuendo jokes to the minor when she was two and three to discussing The Walking Dead with her. We had a bunch. He let a bunch in. Judge Feeney let a bunch in. The question was what kind of weight he was going to put on. He stated that it was still limited purposes of my client's statement that he was foolish for signing the MSA with the restrictions in place. Counsel's argument is essentially they should have been able to get all that evidence in. What would be the purpose? The only purpose to get it all in, as counsel stated, was to give the court a baseline. That's essentially why it came in. It did come in. The court considered all of it. The court just didn't put as much weight or didn't weigh it as heavily as the appellant wants, and that's why we're here today and that's why the court made the decision the court made. There wasn't evidence that he drank. The beer can situation, all that there was was testimony that the beer cans were found in a common area of the house, and that's reflected in the bystander's report. Also, the court let in exhibits. I think it was 101 and 20, no, 101, which was the target, and then there was various letters. Those letters all came in. The court took that into consideration. Again, the court said that he was limiting it to certain points, but that's the court's pride. That's why the court's sitting there, and as in People v. Campbell, the reviewing court should not substitute its judgment for the fact finder or the questions involved as to the weight or credibility of the witnesses. That's because, again, this court's at a disadvantage. No transcript that Judge Feeney got to sit there. He obviously took copious notes. The bystander's report in this case is based entirely off his notes as counsel stated, and that was 20 to 30 pages of notes. The argument that, and I think this was in the reply brief, that the court ignored, essentially ignored the testimony of the plaintiff or, excuse me, the appellant and her mother is just false. The court at no point stated on the record he was going to ignore any of it, nor did he show any willingness to ignore it. I made several objections that were overruled throughout the course of the trial asking to cut testimony off, and the judge overruled them all. In fact, I think that the, I'm sure the bystander's report makes mention of that, that the plaintiff would testify in generalities, and the judge stopped sustaining objections because he stated on the record that that's just the way she testifies. This was a two-day trial. It wasn't back-to-back days. It was a day in October and a day in December, as the record reflects. There was plenty of time, if there were issues in between, that could have been sussed out. In fact, to the point where two evidence depositions were taken. If there is an argument that there was an issue with Exhibit 1, that could have been taken care of prior to. It wasn't, my witness list had the gentleman on it, so there's no reason that he could have been called by the defense if he wanted at that second hearing. This case just boils down to the fact that the judge, Judge Feeney was in a superior position to evaluate all the evidence that came in. The judge weighed the evidence as he saw fit, gave credibility to that that he thought was appropriate. He didn't allow rebuttal evidence. He didn't allow me to cross-examine the appellant. He gets to call the balls and strikes. He gets to make the rules up as we go through the hearing. He did. He decided he had heard enough at that point, and he made his decision. I think the last point of the argument in the briefs was about the order. The appellant felt that the order was lacking, and it's just a situation where the judge took recommendations from both sides and didn't decide in which terms to put it and in which terms not to put it. There was a page-long or two-page-long list that's in the record of conditions they wanted to put on my client if he were going to get visitation. The court didn't adopt those. The appellant urges in one of the briefs that the court taking down notes insinuated that those conditions would be placed into the order. That didn't happen. The judge got to decide what the order would be, how the visitation would work, and that's what he did. Again, manifest way of the evidence, there has to be a showing here that the opposite conclusion is clearly evident. That's not true here. My client, the appellee, did everything he could to be able to rectify the issues that he agreed to that led to him being put in this situation. The reality of the situation is that in these types of cases, yes, there's nobody that follows the person around to make sure they're not drinking, to make sure they don't have any management problems. They have to do the things that would allow for treatment, and he did these things. He went through everything. He's been sober since April 2012. He testified today. Mr. Meyer testified to his regular attendance at AA in Germantown Hills. And if there's no questions, that's all I have. The appellee would ask that this court affirm the decision of the lower court. Thank you. Thank you, Mr. Gibson. Mr. Riva? Your Honor, the points I would like to make are, I really don't consider this just a weight of the evidence case because, and I cite the Sarche case at the beginning of our brief, when a judge has a trial, like we had, hasn't heard all the evidence until it concludes, and I guess in some respects didn't hear all the evidence at all, I think less deference is to be given. And here, not only did he not hear everything, he specifically said that some of the things that were tendered, he was not going to give any vitality to whatsoever from our standpoint, one of which, as I've already mentioned, Exhibits 5, 6, and 12, which is the history and how bad the alcohol abuse and anger had been. The other point is, and this still just puzzles me, it's in the record, a life-size human target where the father comes, they've been divorced for years, and he comes in to show a life-size human target with all of the holes right where the heart is. I don't know what in the world could possibly be the use of that other than to intimidate an ex-wife. And that has nothing to do with the Second Amendment. That has nothing to do with whether he hunts or doesn't hunt. The record didn't say anything about hunting. And that was after the MSA. What did the trial judge say about that? He said that he would admit it in evidence but wasn't going to give it any weight because he said somebody has a Second Amendment right to possess a firearm and he didn't see anything wrong. He did not find that could remotely be considered intimidation of an ex-wife. That's in the bystander's report. That's right out of the record. So I think that's important. But what does it mean when he says, I'm not going to give it any weight? Well, I would say that's an abuse of discretion. Can a judge give absolutely no weight to relevant evidence? I don't think they can, especially if it's unrebutted evidence. So I think that's the big part of this problem here is so much of what we put on, and that's why, you know, again, you need to look at what just the plaintiff's case and the father's testimony was. But then if you look, and there's authority, I cite it, a trier of fact cannot just say, well, I just feel like it's a Wednesday so I'm not going to consider unrebutted evidence in favor of the party that provides it. And this, Mr. Gibson just said, they put their case on very fast. He went into the things about alcohol and anger. He didn't go into anything about all of the points we were making, which I still think is the third issue here, best interest of the child on the basis of what type of parent he was. Leave alcohol and anger apart, but yelling at a kid for taking their medicine wrong, all the things that we have here, I don't have the time to go through all of them. Please look at those. Those are best interest factors. And just because he lifted the alcohol and anger, that didn't just mean, well, then the case is over. We still had the right to show best interests, even if it was our burden, which I don't think it was. But let's say it was our burden to show that the best interests of the child were not to modify these location and supervision restrictions. It seemed to me that the judge just didn't care about that at all to the point where he stopped it after he left us put on our case when he was done thinking we didn't have anything else. He made up his mind in that regard. So I don't think this is a weight of the evidence case. And again, look at the pictures. It doesn't take – this court can look at photographs of a man who has an hour or two of visitation falling asleep while he's taking care of his daughter in the living room of my client's house. No deference needs to be given there. That's right in the record. There's 20 pictures in there. There's him on his cell phone. There's him, the girls laying, watching TV. He's monkeying around, texting. All this is in the record. So the sleeping, the texting, there's pictures of him. He's got the daughter up for sale. Look at the exhibits. There's a picture. Ha, ha, big joke in the parenting class. There's a little child sitting there in a bouncy seat inside of a window of a store with for sale on it. How this just went to such short shrift, I will never know. I'm asking the court, please take a look at this, apply meaningful review for the benefit of this little girl. And unless the court has any questions, I'm out of gas. Thank you, counsel. Thank you, your honor. We will take this measure into advisement being recessed.